IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**KEOTA BROWN, Individually and on Behalf of All Others Similarly Situated**  **PLAINTIFF**

vs.   No. 1:21-cv-1891

**SHIFTKEY, LLC**   **DEFENDANT**

## ORIGINAL COMPLAINT—COLLECTIVE ACTION

COMES NOW Plaintiff Keota Brown ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorney Josh Sanford of Sanford Law Firm, PLLC, and for her Original Complaint—Collective Action ("Complaint") against Defendant ShiftKey, LLC ("Defendant"), she states and alleges as follows:

### I.   PRELIMINARY STATEMENTS

1. This is a collective action brought by Plaintiff, individually and on behalf of all others similarly situated, against Defendant for violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and overtime provisions of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL").

2. Plaintiff seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and a reasonable attorney's fee and costs as a result of Defendant's policy and practice of failing to pay proper overtime compensation under the FLSA and the IMWL.

## II. JURISDICTION AND VENUE

3. The United States District Court for the Northern District of Illinois has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

4. This Complaint also alleges IMWL violations, which arise out of the same set of operative facts as the federal cause of action; accordingly, this Court has supplemental jurisdiction over Plaintiff's IMWL claims pursuant to 28 U.S.C. § 1367(a).

5. The acts complained of herein were committed and had their principal effect against Plaintiff within the Eastern Division of the Northern District of Illinois; therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

## III. THE PARTIES

6. Plaintiff is an individual and resident of St. Joseph County, Indiana.

7. Defendant is a Texas limited liability company.

8. Defendant's registered agent for service of process is The Pennington Firm, PC, at 10300 North Central Expy, Suite 500, Dallas, Texas 75231.

9. Defendant maintains a website in the ordinary course of business at https://www.shiftkey.com/.

## IV. FACTUAL ALLEGATIONS

10. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11. Defendant is a healthcare staffing firm.

12. Defendant acted as the employer of Plaintiff and is and has been engaged in interstate commerce as that term is defined under the FLSA.

13. Defendants employ two or more individuals who engage in interstate commerce or business transactions, or who produce goods to be transported or sold in interstate commerce, or who handle, sell, or otherwise work with goods or materials that have been moved in or produced for interstate commerce, such as medical supplies.

14. Defendants' annual gross volume of sales made or business done is not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) in each of the three years preceding the filing of the Original Complaint.

15. Defendants employed Plaintiff as a Travel Nurse from December of 2020 until March of 2021.

16. Plaintiff worked in multiple locations for Defendant within Illinois, including at a nursing home in Chicago.

17. At all times relevant herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA and the IMWL.

18. Defendant also employed other Travel Nurses within the three years preceding the filing of this lawsuit.

19. At all relevant times herein, Defendant directly hired Travel Nurses to work on its behalf, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment.

20. As a Travel Nurse, Plaintiff was primarily responsible for caring for patients and helping them with their daily living.

21. Other Travel Nurses had the same or similar duties as Plaintiff.

22. Defendant paid Plaintiff an hourly wage.

23. Other Travel Nurses were also paid an hourly wage.

24. Defendant classified Plaintiff and other Travel Nurses as independent contractors.

25. Plaintiff regularly worked over forty hours per week.

26. Plaintiff estimates she regularly worked approximately 80 hours per week.

27. Upon information and belief, other Travel Nurses had similar schedules as Plaintiff and also regularly worked over forty hours per week.

28. Defendant failed to pay Plaintiff and other Travel Nurses an overtime rate for hours worked over forty each week. Instead, Defendant paid Plaintiff and other Travel Nurses their regular hourly rate for all hours worked.

29. Plaintiff's and other Travel Nurses' work followed the usual path of employer-employee relationships; Defendant treated them as independent contractors only for tax purposes and for Defendant's convenience.

30. Defendant, at all times relevant hereto, knew that Plaintiff and other Travel Nurses were acting as employees, rather than as independent contractors, and treated them as employees.

31. Defendant set Plaintiff's and other Travel Nurses' schedules. Plaintiff and other Travel Nurses were required to arrive at work at specific times and remain until their scheduled shift was over.

32. If Plaintiff or other Travel Nurses were tardy too many times, Shiftkey would suspend their account and would not continue to place them with healthcare facilities.

33. Defendant required Plaintiff and other Travel Nurses to satisfy whatever needs and requirements Defendant and Defendant's customers had.

34. Defendant expected Plaintiff and other Travel Nurses to follow Defendant's policies regarding their employment.

35. Plaintiff and other Travel Nurses were required to complete the tasks Defendant assigned to them or risk being disciplined, including termination.

36. Plaintiff and other Travel Nurses did not manage Defendant's enterprise or a customarily recognized subdivision of the enterprise.

37. Plaintiff and other Travel Nurses did not exercise discretion and independent judgment with respect to any matters of significance.

38. Plaintiff and other Travel Nurses were hired to work for Defendant for a continuous and ongoing period of time.

39. Plaintiff and other Travel Nurses did not select any employees for hire, nor did they have any ability to fire employees.

40. Plaintiff and other Travel Nurses did not have any control of or authority over any employee's rate of pay or working hours.

41. Plaintiff and other Travel Nurses regularly and customarily worked at Defendants' job sites.

42. Plaintiff and other Travel Nurses were required to follow Defendant's dress code.

43. Plaintiff and other Travel Nurses were required to wear a nametag which featured Defendant's name as well as their own.

44. Defendant determined Plaintiff's and other Travel Nurses' pay scale for services without input from or negotiation with Plaintiff and other Travel Nurses.

45. Defendant set prices for services without input from or negotiation with Plaintiff and other Travel Nurses.

46. Defendant made decisions on advertising Defendant's business without Plaintiff's and other Travel Nurses' input.

47. Defendant made decisions on what new business to pursue or take without Plaintiff's and other Travel Nurses' input.

48. Plaintiff and other Travel Nurses did not negotiate contracts or prices with Defendant's customers.

49. Defendant directed Plaintiff and other Travel Nurses.

50. Plaintiff and other Travel Nurses had no opportunity to share in Defendant's profits.

51. Plaintiff and other Travel Nurses did not share in Defendant's losses.

52. Plaintiff's and other Travel Nurses' had no investment in Defendant's business or operations.

53. Plaintiff and other Travel Nurses routinely used medical supplies in carrying out their duties. Thus, they used, handled, sold, and/or worked on goods or materials that were produced for or traveled in interstate commerce.

54. Defendants knew or showed reckless disregard for whether the way they paid, and failed to pay, Plaintiff and other Travel Nurses violated the FLSA.

55. Plaintiff and other Travel Nurses regularly and typically worked more than forty hours per week while working for Defendants.

56. Defendant did not pay Plaintiff and other Travel Nurses 1.5x their regular rate of pay for all hours worked over 40 per week.

## V. REPRESENTATIVE ACTION ALLEGATIONS

57. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

58. Plaintiff brings this claim for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons similarly situated as Travel Nurses who were, are, or will be paid wages by Defendant within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

59. Overtime premiums for all hours worked over forty in any week;

60. Liquidated damages; and

61. Attorneys' fees and costs.

62. Plaintiff proposes the following collective under the FLSA:

**All Travel Nurses, or all employees who had the same or similar duties as Travel Nurses, who received payment within the past three years for work performed in any week in which they worked over forty hours.**

63. In conformity with the requirements of FLSA Section 16(b), Plaintiff has filed or will soon file a written Consent to Join this lawsuit.

64. The relevant time period dates back three years from the date on which Plaintiff's Original Complaint—Collective Action was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth herein below.

65. The members of the proposed FLSA collective are similarly situated in that they share these traits:

66. They were paid on an hourly basis;

67. They worked over forty hours in at least one week;

68. They had the same or substantially similar job duties and requirements;

69. They were subject to Defendant's common policy of classifying them as "independent contractors;"

70. They were subject to Defendant's common policy of failing to pay a proper overtime rate for hours worked over forty in a week;

71. They were subject to the many other policies and practices enumerated above.

72. Plaintiff is unable to state the exact number of the collective but believes that the collective exceeds 100 persons.

73. Defendant can readily identify the members of the collective, who are a certain portion of the current and former employees of Defendant.

74. The names and physical and mailing addresses of the probable FLSA collective action plaintiffs are available from Defendant.

75. The email addresses of many of the probable FLSA collective action plaintiffs are available from Defendant.

## VI. FIRST CLAIM FOR RELIEF
### (Individual Claim for Violation of the FLSA)

76. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

77. Plaintiff asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

78. At all relevant times, Defendants have been, and continue to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

79. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay a minimum wage for all hours worked up to 40 each week and to pay 1.5x their regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

80. Defendants classified Plaintiff as non-exempt from the requirements of the FLSA.

81. Defendants failed to pay Plaintiff a sufficient overtime premium for all hours worked over forty each week.

82. Defendants knew or should have known that their actions violated the FLSA.

83. Defendants' conduct and practices, as described above, were willful.

84. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for monetary damages, liquidated damages and costs, including reasonable attorney's fees provided by the FLSA for all violations which occurred beginning at least three years preceding the filing of Plaintiff's initial complaint, plus periods of equitable tolling.

85. Defendants have not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and, as a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wage and unpaid overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

86. Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiff as provided by the FLSA, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

## VII. SECOND CLAIM FOR RELIEF
### (Collective Action Claim for Violation of the FLSA)

87. Plaintiff repeats and re-alleges all previous paragraphs of this Original Complaint as though fully incorporated herein.

88. Plaintiff brings this action on behalf of all other similarly situated individuals to recover monetary damages owed by Defendant to Plaintiff and members of the putative collective for unpaid overtime compensation for all the hours they worked in excess of forty each week.

89. Plaintiff brings this action on behalf of herself and all other Travel Nurses classified as independent contractors, former and present, who were and/or are affected by Defendant's willful and intentional violation of the FLSA.

90. 29 U.S.C. § 207 requires employers to pay each employee 1.5x the employee's regular rate for all hours that the employee works in excess of 40 per week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

91. Defendant misclassified Plaintiff and other Travel Nurses as independent contractors and as exempt from the overtime requirements of the FLSA.

92. Defendant failed to pay Plaintiff and other similarly situated employees at the proper overtime rate for all hours worked in excess of forty hours in a week, despite their entitlement thereto.

93. Defendant's conduct and practices, as described above, have been and is willful, intentional, unreasonable, arbitrary and in bad faith.

94. By reason of the unlawful acts alleged in this Complaint, Defendant is liable to Plaintiff and all those similarly situated for, and Plaintiff and all those similarly situated seek, unpaid overtime wages, liquidated damages, and costs, including reasonable attorney's fees as provided by the FLSA.

95. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiff and all those similarly situated as provided by the FLSA, Plaintiff and all those similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

### VIII. THIRD CLAIM FOR RELIEF
**(Individual Claim for Violation of the IMWL)**

96. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

97. Plaintiff asserts this claim for damages and declaratory relief pursuant to the IMWL, 820 ILCS 105/1, *et seq.*

98. At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the IMWL, 820 ILCS 105/3.

99. IMWL, 820 ILCS 105/4a(1) requires employers to pay all employees 1.5x regular wages for all hours worked over 40 hours in a week, unless an employee meets the exemption requirements of 820 ILCS 104/4a(2).

100. Defendants failed to pay Plaintiff a sufficient overtime premium for all hours worked over forty each week.

101. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

102. By reason of the unlawful acts alleged in this Complaint, Defendants are liable to Plaintiff for monetary damages, liquidated damages, damages of 5% of the amount of underpayment for each month following the date of payment during which such underpayments remain unpaid, costs, and a reasonable attorney's fee provided by the IMWL for all violations which occurred within the three years preceding the filing of Plaintiffs' initial complaint, plus periods of equitable tolling. 820 ILCS 105/12.

103. Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiff as provided by the IMWL, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

## IX. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Keota Brown, individually and on behalf of all others similarly situated, respectfully prays that each Defendant be summoned to appear and to answer this Complaint and for declaratory relief and damages as follows:

A. Declaratory judgment that Defendant's practices alleged in this Complaint violate the FLSA, the IMWL and their related regulations;

B. Certification of a collective under Section 216 of the FLSA of all individuals similarly situated, as further defined in any motion for the same;

C. Judgment for damages suffered by Plaintiff and others similarly situated for all unpaid overtime wages under the FLSA, the IMWL and their related regulations;

D.  Judgment for liquidated damages owed to Plaintiff and all others similarly situated pursuant to the FLSA, the IMWL and their related regulations;

E.  An order directing Defendant to pay Plaintiff and all others similarly situated interest, a reasonable attorney's fee and all costs connected with this action; and

F.  Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**KEOTA BROWN, Individually
and on Behalf of All Others
Similarly Situated, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Parkway, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com